Bloom *v.* Whelan, Appellant.

*Negligence—Automobiles—Speed—Infant.*

In an action against the owner and driver of an automobile, for injuries to a boy five years old the case is for the jury, where the evidence tends to show that at the time of the accident the defendant was coasting his car on a grade down a street paved with fire brick and not traversed by a street car line, that he was going at a rate estimated by plaintiff's witnesses at twenty-five miles an hour, and by the defendant at twelve miles an hour; that about the middle of the block a number of children were collected on the sidewalk visible to the plaintiff; that the boy was struck about four or five feet from the curb as he started to walk across the street oblivious to the approach of the car; and that plaintiff gave no signal as he approached the group of children.

Argued Dec. 9, 1913. Appeal, No. 295, Oct. T., 1912, by defendant, from judgment of C. P., No. 4, Phila. Co., Sept. T., 1910, No. 2,629, on verdict for plaintiff in case of Arthur Bloom, by his next friend and father, Abraham Bloom, v. Patrick J. Whelan. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries to a boy five years old. Before AUDENRIED, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff, Arthur Bloom, for $500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*G. Von Paul Jones,* for appellant.—This case is ruled by Severino v. Transit Co., 236 Pa. 258.

*Harry G. Sundheim,* with him *Herbert P. Sundheim,* for appellee.—A case strikingly similar to the case at bar is Walbridge v. Schuylkill Electric Ry. Co., 190 Pa. 274.

OPINION BY HEAD, J., February 20, 1914:

In this case, as in many of its class, the testimony as to the most material feature presents such radical contradictions that it would be difficult, if not impossible, for the jury to reconcile them. In this respect their verdict establishes they believed and adopted the testimony advanced in behalf of the plaintiff. Many of the important facts are not in controversy.

The defendant was driving his own car at the time it struck the plaintiff child. He was driving along a street over which he frequently passed. The street was paved with fire brick and was not traversed by any street car line. At the time of the occurrence in question it was entirely free from traffic of any character to impede or control the movement of the defendant's car. In the direction he was going the street declined sharply down grade. His car was coasting, that is, running by gravity without the use of its own power. Its motion was therefore comparatively quiet, unaccompanied by the noise incident to a throbbing engine. The portion of the street he selected for the passage of his car was within from four to six feet of the curb line of the sidewalk. As he approached the point where the accident occurred, a number of children were collected on the sidewalk. The point of collision was about midway in the block. As to his knowledge that the children were on the sidewalk, the defendant, in answer to a question, said, "Naturally a driver, looking in the cartway, is not looking at the houses on the sidewalk, but as you are looking directly, there is a shadow that you can

catch going along, and there apparently appeared to be a group of boys on the sidewalk." His friend sitting in the seat beside him also testified he saw the group as the car approached.

Under these circumstances the question of first importance is, at what rate of speed was the car traveling as it approached, under the conditions stated, the group of children? On this vital point the defendant answers: "About twelve miles an hour. I go down that grade very carefully because I have been down there very frequently, and little children—natural, youthful innocence, I have them myself—sometimes will jump in the middle of the street and throw their hands up in front of you." Because of his experience of such things, he testifies his car was partly under the influence and control of the brake and could be readily stopped almost instantly. He further adds that he saw no indication of any intent on the part of any of the boys to leave the sidewalk until the little plaintiff suddenly appeared immediately in front of his car, so that it was impossible to stop it until the radiator had struck the child and knocked him down. If this testimony truly portrayed the occurrence just as it happened, it would be difficult to point to any fact indicating lack of due care on the part of the defendant except perhaps the fact that he drove so close to the sidewalk when there was apparently no reason he should do so.

On the other hand, there is an abundance of testimony to warrant a finding that his car was moving at much greater speed than his testimony fixes its rate. One disinterested witness declared to the jury that just west of the point of collision the car passed him; that his attention was directed to it because of the speed at which it was running, and he fixed that rate at about twenty-five or thirty miles an hour. On cross-examination, in response to an inquiry as to what attracted his attention to this particular passing car, the witness said: "What attracted my attention to the car was the speed of the

car. Not only on this occasion, but every other occasion that he went by the place he was traveling at a high rate of speed." Another witness, describing the speed of the car, said: "It was going about as fast as a trolley car goes when it is going full speed." Still another witness said it was going "as fast as any trolley car can go." It is true that all of these witnesses were giving but opinion evidence, which was just what the defendant gave on the same subject. No one who has not his eye on the mechanical indicator can testify with accuracy as to the speed of a moving car. But in these days, when residents of our cities and towns are constantly accustomed to the sight of passing automobiles, there is not much difficulty in distinguishing between a rate of ten miles an hour and one of twenty-five. Whilst a car, moving at usual and moderate speed passes unnoticed, one moving at an unusual or high rate of speed instantly attracts our attention.

It cannot be said, therefore, that the testimony exhibits no warrant for a finding by the jury that the car was traveling at a high rate of speed. If that be true, it is also true, as already indicated, that it was traveling in a manner least calculated to give notice of its approach, and it was traveling, at the will of the driver, along a portion of the cartway where possible danger to children gathered on the sidewalk might easily become most imminent. According to the preponderance of the testimony, the little child who was injured started to walk across the street to the sidewalk on the other side, whither at least one of his companions had preceded him. He was apparently oblivious of the approach of the car, and he was struck before he had gone more than four or five feet from the sidewalk. There was nothing to obstruct the driver's view of the child at least from the moment it stepped from the curb. Although there were at least two grown persons conversing almost at the spot where the boys were congregated, one of whom saw the approaching car, there was no warning cry from anyone

to the child.   Would it be a fair inference that this was because there was no time to make such warning effective?   Would it be such care as a man of ordinary prudence would exhibit, knowing, as the defendant knew, the habits and proclivities of small children gathered on the sidewalk of a quiet street, to drive his car at a high rate of speed so close to the sidewalk on which they were congregated?   The jury have answered this question in the negative, and we know of no rule of law which requires or permits us to reverse their finding.

Again, it is ordinarily true that the driver of an automobile, traversing a quiet side street midway between cross streets, is not obliged to sound his horn when there is no apparent reason for doing so.   Such a practice would not only develop some of the elements of a nuisance but would soon deprive what is intended for an unusual warning of any such effect.   But if a man undertakes to coast his car at a rapid rate down the smooth surface of a sloping street, close up to the sidewalk, when he could as well travel in the middle of the street, and if again, knowing the habits of children, he sees a group ahead of him on the sidewalk, so close that a sudden step would put them in peril, would it not be his duty, as a reasonably prudent man, to give distinct warning of the approach of the car?   Again, we have, in our judgment, a question to be resolved only by the jury.

The learned trial judge, in a perfectly clear and impartial charge, carefully submitted these questions to the jury, as well as the question of the contributory negligence of the father of the child, he having also brought an action to recover in his own right.   The record shows the jury, as well in their request for further instructions as in their final verdict, considered these questions with discrimination.   If the defendant has suffered any wrong in the judgment which the child recovered, it is because the plaintiff's witnesses were in error in their testimony as to the speed of the car, and because the jury, in the

exercise of the power invested in that body alone, accepted the testimony of these witnesses in that vital respect rather than that of the defendant and the man who was riding in the car beside him. He cannot successfully complain of any error of law committed by the learned trial judge, and we are therefore unable to disturb the judgment that has been entered. The assignments of error are overruled.

Judgment affirmed.